# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### AUGUST SESSION, 1998

FILED

November 10, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9801-CR-00007 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | HON. JOSEPH B. DAILEY |
| WALTER JOHNSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Especially Aggravated Kidnapping) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CRIMINAL COURT OF SHELBY COUNTY

FOR THE APPELLANT:

ROBERT C. BROOKS
707 Adams Avenue
Memphis, TN 38177

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

ELIZABETH T. RYAN
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243-0493

WILLIAM L. GIBBONS
District Attorney General

JAMES M. LAMMEY
Assistant District Attorney General
Criminal Justice Complex, Suite 301
201 Poplar Street
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

On May 1, 1997, the Defendant, Walter Johnson, was convicted by a Shelby County jury of especially aggravated kidnapping and was subsequently sentenced to twenty-five years as a Range I offender. The Defendant now appeals his conviction and sentence as of right, pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. We affirm the judgment of the trial court.

On appeal, the Defendant presents three issues for review: (1) whether the in-court identification of the Defendant was tainted by an unduly suggestive lineup; (2) whether the trial court properly allowed proof of the rape of the victim during the Defendant's trial for especially aggravated kidnapping; and (3) whether the trial court properly sentenced the Defendant to twenty-five years for especially aggravated kidnapping.

On January 27, 1994, between noon and one o'clock p.m., the victim in this case, Joyce Davis, stopped on her way home to use a pay phone on McLemore Street in Memphis. While she was using the phone, the Defendant, whom she did not know, pulled up in a red pick-up truck and asked how she was doing. She responded that she was fine. The Defendant then got out of the truck, walked over to her, touched her with a knife, and told her, "I think you need to get in my truck." Fearful, the victim followed his commands.

The Defendant escorted the victim to the passenger side of his truck, and before he shut the door, he tore the knob from the window lever and threw it on the floorboard. Once inside the truck, the victim noticed that the passenger side door handle had also been removed. The Defendant proceeded to drive the truck across a bridge to Arkansas. During the drive, the Defendant asked the victim to raise up her skirt so that he could see her legs. In Arkansas, they drove on a dirt road to a secluded spot, where they stopped. The Defendant turned to the victim and said, "Bitch, I'm going to kill you." The victim began to cry, and the Defendant told her to stop crying so that she would not arouse the suspicions of the police should they drive by or stop.

The Defendant had the victim place one leg on the floorboard and the other on the seat of the truck, and he tore her pantyhose. His penis was outside of his pants; and as he tore the victim's pantyhose, he was ejaculating. He stated, "What is a piece of p____y compared to your life." He performed cunnilingus on the victim and then penetrated her, holding to the back of her neck a knife, which the victim described at trial as having a black handle and a long blade.

The Defendant penetrated the victim for approximately thirty minutes but stopped the rape when he heard another car approaching. The Defendant emerged from the truck to relieve himself, leaving the knife on the dash of the truck. When he got back into the truck, he drove to another location. At the second location, evidently the truck almost got stuck, and the Defendant decided to take the victim home. At that time, the Defendant placed the knife in the sun visor above his head.

During the abduction and rape, the Defendant referred to himself several times as "Willie." Several times he told the victim, "Call me Mr. Willie." One item of evidence introduced at trial was a piece of paper taken from the Defendant's residence on which the words "Willie call me" were written.

On the way back to Memphis, the Defendant apologized for raping the victim and asked if she had been raped before. Although the Defendant believed that he was taking the victim to her own home, the victim had the Defendant drop her off at a neighbor's house instead. The Defendant ordered her not to call the police and then backed the truck down the street. The victim was able to see three of the digits on the truck's license plate as he backed down the street. She testified at trial that she had seen the numbers "363," although she also admitted that she was not entirely sure she remembered the correct numbers. After the Defendant left, the victim went inside, called the police, and was taken to the Rape Crisis Center, where she submitted to medical testing.

The victim told police that the Defendant's truck had the word "Ford" on the outside and the word "Ranger" on the inside. She described it as having a red exterior and some white trim, a darker panel on the driver's front side near the fender, and torn seats in the interior. She described her perpetrator as "a male black, approximately 200 pounds with a heavy build, a full gray beard, a blue flannel shirt, blue jeans, and some type of green shoes."

A few days after the abduction and rape, the victim saw the Defendant driving in the same truck, and she went into a nearby store to call the police. On this occasion, she was able to take down the full license tag number, "YHN-633,"

which she relayed to the police. However, evidently the victim was mistaken about the tag, because the license numbers that she provided belonged to a 1985 Ford pick-up which was not red and which was registered to a man named Victor McGee.

On August 18, 1994, a Memphis police officer who was working on the investigation in this case received information that he could find the Defendant near Vance and Orleans streets around six o'clock a.m. The officer went to the area at that hour but had no luck finding the Defendant. He returned the following morning at the same time and saw a red pick-up truck with ladder racks on the top driven by a man who matched the description of the victim's assailant. The license plate on the vehicle was "YHW-363." When he stopped the vehicle, the officer noted and photographed a knife which was stuck in the sun visor above the driver's seat. He then arrested the driver, whom he identified as the Defendant, Walter Johnson.

The police conducted two separate lineups in which the Defendant participated. Ms. Davis was present at the second lineup and picked the Defendant out of the lineup as her assailant. At the police station, she also identified the Defendant's truck as the vehicle driven by her assailant.

### I. MOTION TO SUPPRESS IN-COURT IDENTIFICATION

The Defendant first argues that the victim's in-court identification of him as her abductor and rapist was tainted by an unduly suggestive lineup. He argues that although the trial court did suppress the lineup identification, the court erred

in denying his motion to suppress the victim's in-court identification of him. He contends that this error resulted in a violation of his due process rights.

The Defendant points to the fact that he was the only person in the lineup who had a full, salt-and-pepper beard and salt-and-pepper hair. He therefore asserts that he was the only suspect in the lineup who completely matched the description of the perpetrator provided by the victim. The Defendant argues that the lineup "was so extraordinarily suggestive that it created a virtual certainty of irreparable misidentification." He contends that the lineup thus tainted the victim's in-court identification of him as her perpetrator.

On a motion to suppress, deference is given to the trial court to assess the credibility of the witnesses and determine issues of fact, and the prevailing party is entitled to the strongest legitimate view of the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The findings of fact of the trial court at a suppression hearing will not be disturbed on appeal unless the evidence in the record preponderates otherwise. Id.

The law in Tennessee concerning lineup procedures is quite clear. "A defendant's due process rights may be violated by a lineup if the identification procedure was so suggestive as to give rise to 'a very substantial likelihood of irreparable identification.'" State v. Larry Blair, No. 01C01-9703-CR-00084, 1998 WL 158750, at *3 (Tenn. Crim. App., Nashville, Apr. 7, 1998) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). "A pretrial confrontation procedure may be unlawful if it is unnecessarily suggestive and conducive to irreparable

mistaken identification under the totality of the circumstances." State v. Philpott, 882 S.W.2d 394, 399 (Tenn. Crim. App. 1994).

However, "[e]ven when pretrial identification procedures are found to be suggestive, out-of-court and in-court identifications may still be admissible. The inquiry is whether the identification was reliable even though the procedure was suggestive." Id. at 400; see State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). The United States Supreme Court set forth five factors to be considered when evaluating the propriety of the identification process. Neil v. Biggers, 409 U.S. 188, 199-200 (1972); Bennett v. State, 530 S.W.2d 511, 514 (Tenn. 1975). They are "[1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation." Neil, 409 U.S. at 199-200.

In this case, the trial court suppressed the lineup identification but overruled the Defendant's motion to suppress the victim's in-court identification. The trial judge stated that he "was satisfied that [the victim's] in-court identification was based on her recollection of the events and not on refreshing of any memory as a result of the lineup that took place." We agree with the trial court's decision to exclude the lineup identification at trial because of its suggestive nature. However, we cannot agree with the Defendant that the suggestive lineup tainted the victim's in-court identification of her perpetrator.

Applying the totality of the circumstances standard and the five factors enumerated above, we find that the victim's in-court identification of the Defendant as her assailant was sufficiently reliable. With regard to factor one, the victim's opportunity to view her assailant, the victim in this case spent approximately two hours during the middle of the day with her assailant, who made no attempt to conceal his identity. Factor two is the degree of attention the victim paid to her assailant. Like the victim in Neil v. Biggers, the victim in this case "was no casual observer, but rather the victim of one of the most personally humiliating of all crimes." Id. at 200. The entire encounter, including the rape, lasted approximately two hours, giving the victim ample time and cause to pay close attention to her assailant. Factor three is the degree of accuracy of the victim's description. In this case, the description the victim gave to the police of her assailant was detailed and accurate. She also described the Defendant's truck with great detail and even provided the police a strikingly similar license plate number to that on the Defendant's truck. With regard to factor four, the victim expressed absolutely no doubt in court or at any other time as to the identity of her assailant. Finally, factor five is the only factor that could conceivably weigh against the reliability of the victim's identification since there was a three-year lag between the crime and the trial. However, in light of the totality of the circumstances and the other four factors, we believe that this factor did not substantially affect the victim's ability to correctly identify the Defendant as her assailant.

## II. PROOF OF THE RAPE

The Defendant next contends that the trial court erred in not limiting the proof of rape. While the kidnapping in this case took place in Tennessee, the

actual rape of the victim took place in Arkansas. Therefore, the Defendant was not tried for rape in Tennessee. Basing his decision on Rule 403 of the Tennessee Rules of Evidence, the trial judge decided to allow evidence of the rape during the Defendant's trial for especially aggravated kidnapping, concluding that the probative value of the rape testimony outweighed any prejudicial effect it might have. He determined that evidence of the rape was not only relevant to a determination of the victim's credibility, but also inseparable from the kidnapping evidence in this case.

The Defendant argues that the probative value of the rape testimony was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. He contends that the trial court allowed the victim to recount too many details of the rape, which shocked and horrified the jury, "effectively turning what was technically a trial for kidnaping in to [sic] what was, for all practical purposes, a trial for rape." The Defendant contends that the trial court's decision to allow detailed rape testimony was an abuse of discretion.

In Tennessee, evidence is deemed relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. Thus, under Rule 403, prejudicial evidence is not automatically excluded; in order for it to be excluded, its probative value must be "substantially outweighed" by its

prejudicial effect. (Emphasis added.) As this Court has previously noted, "[a]ny evidence which tends to establish the guilt of an accused is highly prejudicial to the accused, but this does not mean that the evidence is inadmissible as a matter of law." State v. Dulsworth, 781 S.W.2d 277, 287 (Tenn. Crim. App. 1989).

The determination of whether evidence is relevant, and if so, whether it should be excluded under Rule 403 of the Tennessee Rules of Evidence, is within the sound discretion of the trial judge. State v. Williamson, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995); State v. Hill, 885 S.W.2d 357, 361 (Tenn. Crim. App. 1994). "In deciding these issues, the trial court must consider, among other things, the questions of fact that the jury will have to consider in determining the accused's guilt as well as other evidence that has been introduced during the course of the trial." Williamson, 919 S.W.2d at 78. This Court will not overturn a trial court's ruling on a Rule 403 issue absent a clear showing of abuse of discretion. State v. Hayes, 899 S.W.2d 175, 183 (Tenn. Crim. App. 1995); State v. Bigbee, 885 S.W.2d 797, 806 (Tenn. 1994).

In this case, when ruling in favor of admitting evidence of the rape, the trial judge stated:

> [T]he burden on the State is to convince the jury, to prove beyond a reasonable doubt and to do so by convincing the jury that this victim is a credible witness. . . . And so to the extent to which this witness can articulate what happened to her, and the details of what happened, and the accuracy of what happened will go a long way in convincing the jury that she is to be believed. This is a January '94 event. And so I think it's important to allow this witness to explain as much detail as she can to convince the jury that she still remembers what went on over three years ago.

It is clear from the foregoing that the trial court was aware of the prejudicial effect of the rape testimony, but balanced it against the probative value of the testimony and concluded that it was necessary to the case. Viewing the case as a whole, we cannot agree with the Defendant that the trial judge abused his discretion in admitting evidence of the rape.

## III. SENTENCING

The Defendant next contends that the trial court improperly sentenced him to twenty-five years for especially aggravated kidnapping. He argues that the court should not have applied the following enhancement factors when sentencing him:

> (1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
> . . .
> (5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;
> (6) The personal injuries inflicted upon . . . the victim [were] particularly great;
> (7) The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement;
> . . .
> (10) The defendant had no hesitation about committing a crime when the risk to human life was high;
> . . . .

Tenn. Code Ann. § 40-35-114(1), (5), (6), (7), (10).[1]

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a <u>de novo</u> review of the sentence with a presumption that the determinations made by the trial court are correct.

---

[1] The Defendant contends that the trial court also applied factor (16), which is that the crime was committed under circumstances in which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114 (16). However, from a reading of the record, it does not appear that the trial court applied this factor when sentencing the Defendant. Therefore, we have not considered it in our review.

Id. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

### A. High Risk to Human Life

We first find that enhancement factor (10), which provides that "[t]he defendant had no hesitation about committing a crime when the risk to human life was high," was improperly applied. Tenn. Code Ann. § 40-35-114(10). This factor is essential to the crime of especially aggravated kidnapping. In Manning v. State, this Court differentiated between crimes requiring "that the criminal

-12-

activity be 'accomplished by the use of a deadly weapon'" and those requiring only "that the defendant be 'armed with a deadly weapon.'" 883 S.W.2d 635, 640 (Tenn. Crim. App. 1994). This Court concluded that statutes including the phrase, "armed with a deadly weapon," "do not require that the weapon be actually employed in the commission of the offense" and therefore warrant application of enhancement factor (10). Id.; see State v. Kern, 909 S.W.2d 5, 7 (Tenn. Crim. App. 1993).

Our especially aggravated kidnapping statute employs the following language: "Especially aggravated kidnapping is false imprisonment . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to believe it to be a deadly weapon . . . ." Tenn. Code Ann. § 39-13-305(1). There is necessarily a high risk to human life whenever a deadly weapon is used. Therefore, we find that enhancement factor (10) was improperly applied in sentencing the Defendant.

*B. Exceptional Cruelty*

In addition, we find that there was not sufficient evidence in this case to uphold application of enhancement factor (5), that the defendant treated the victim with exceptional cruelty in the commission of the offense. Id. § 40-35-114(5). The statute specifically requires a showing of "exceptional" cruelty, which is usually found in cases of abuse or torture. See State v. Davis, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991); State v. Haynes, 720 S.W.2d 76, 80 (Tenn. Crim. App. 1994). A showing of exceptional cruelty under the statute requires something beyond that needed to effectuate the crime. State v. Embry, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995).

In Manning v. State, the cruelty factor was found not applicable in a case in which the Defendant abducted the victim and forced her to participate in four sexual acts while holding a knife to her person, using abusive language toward her, and making threats to harm her. 883 S.W.2d at 639. This Court also found the exceptional cruelty factor did not apply in a case in which the defendant entered the victim's apartment, pushed her into the bathtub, and hit her in the mouth causing injuries. State v. David Patrick Pearson, No. 03C01-9103-CR-87, 1992 WL 70547, at *5 (Tenn. Crim. App., Knoxville, Apr. 9, 1992), aff'd in part and remanded for resentencing, 858 S.W.2d 879 (Tenn. 1993) (on appeal, the Tennessee Supreme Court did not specifically address the exceptional cruelty factor but upheld the judgment of the Court of Criminal Appeals with regard to enhancement and mitigation factors.). "In State v. Edwards, 868 S.W.2d 682 (Tenn. Crim. App. 1993), this [C]ourt rejected this enhancement factor for a rape conviction in which the defendant 'gagged, threatened and struck the victim' while committing the offense. The court held that the crime was 'cruel but not exceptionally so, so as to warrant application of the exceptional cruelty enhancement factor.'" Embry, 915 S.W.2d at 456.

Clearly, the victim has suffered a great deal of emotional pain and anguish as a result of her assault. As this Court has previously noted, "[a]nytime that an individual is raped exceptional cruelty has been perpetrated upon the victim in the eyes of this Court. . . . The crime of rape . . . is always a cruel, ruthless, and atrocious crime. Rapists dehumanize their victims and generally inflict everlasting scars on their lives." Pearson, 1992 WL 70547, at *5. Not only did the victim suffer the dehumanizing experience of rape, but she was also abducted at knife point, threatened with her life, and driven to a secluded spot in

another state to suffer her fate, all of which is the basis for the crime for which the Defendant was convicted in the court below.

We acknowledge that the crime committed against the victim in this case was especially cruel. It is for this reason that the legislature has classified the crime of especially aggravated kidnapping as a Class A felony, the most serious crime under our law excepting only those crimes which potentially carry the death penalty. While fully recognizing the severity of this crime, we are unable to conclude that the record supports application of enhancement factor (5). Tenn. Code Ann. § 40-35-114(5).[2] Although we certainly do not intend to belittle the impact of this crime on the victim, we do not believe that the harm inflicted upon the victim in this case rises to the level of "exceptional cruelty" prescribed by our statute.

*C. Other Enhancement Factors*

Despite the trial court's misapplication of factors (5) and (10), based upon the other facts in this case, we do not hesitate to uphold the sentence imposed upon the Defendant. Id. § 40-35-114(5), (10). Enhancement factor (1) requires that the court consider the defendant's past history of criminal convictions or behavior. Id. § 40-35-114(1). The Defendant in this case has been arrested many times, although his presentence report does not provide clear documentation of all charges and convictions. It is clear, however, from the presentence report that in 1979 the Defendant was convicted of murder in the

---

[2] We note that some facts which may have been used to uphold application of factor (5) in this case may have been related to the commission of the rape, although it is unclear from a reading of the record precisely which facts the trial judge relied upon in applying the exceptional cruelty factor. As we have previously mentioned, the Defendant was tried and convicted in our jurisdiction only of especially aggravated kidnapping.

first degree and that the Defendant was also convicted of robbery in 1971. This evidence is clearly sufficient to warrant application of enhancement factor (1).

Enhancement factor (6) requires that the court consider whether the personal injuries inflicted upon the victim were particularly great. Id. § 40-35-114(6). This factor is not applicable to a crime involving serious bodily injury because it is considered an essential element of such a crime. See State v. Crowe, 914 S.W.2d 933 (Tenn. Crim. App. 1995). Although serious bodily injury may be an element of especially aggravated kidnapping, the Defendant in this case was charged because of his "use of a deadly weapon." The indictment does not charge the Defendant with the infliction of serious bodily injury on the victim during the commission of the kidnapping. Therefore, enhancement factor (6) may be applied here. In applying this factor, the trial judge read the victim's impact statement for the record and concluded, "[T]he damage that was done in this specific case . . . was extensive and far-reaching. Virtually destroyed this woman's mental health, stability, family life." After reviewing the record, we agree that factor (6) was properly applied in sentencing the Defendant.

The final enhancement factor at issue is factor (7), which requires that the offense be committed to gratify the defendant's desire for pleasure or excitement. Tenn. Code Ann. § 40-35-114(7). The State has the burden of demonstrating that a crime is sexually motivated. State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993); State v. Clabo, 905 S.W.2d 197, 206-07 (Tenn. Crim. App. 1995); State v. Smith, 910 S.W.2d 457, 460 (Tenn. Crim. App. 1995). In the case at hand, the trial judge stated that he believed a court should presume that a crime of this nature is sexually motivated unless there is evidence to the contrary. While we

respectfully disagree with the trial court's statement, we believe that there is sufficient evidence in this case to uphold application of factor (7). Tenn. Code Ann. § 40-35-114(7); see State v. Kissinger, 922 S.W.2d 482, 491 (Tenn. 1996); State v. James Lloyd Julian, II, No. 03C01-9511-CV-00371, 1997 WL 412539 (Tenn. Crim. App., Knoxville, July 24, 1997).

The record reflects that the Defendant kidnapped the victim for the express purpose of raping her. The Defendant abducted the victim and drove her immediately to a secluded spot in Arkansas, asking her on the way to pull up her skirt so that he could see her legs. As he ripped her pantyhose, he was already ejaculating. He then penetrated the victim, both orally and with his penis, over nearly a two hour period. Therefore, the trial court properly applied this factor in sentencing the Defendant.

Finally, the Defendant argues that Tennessee Code Annotated § 39-13-305(b)(2) should have been applied in sentencing him. This section provides that "[i]f the offender voluntarily releases the victim alive . . . , such action[] shall be considered by the court as a mitigating factor at the time of sentencing." Tenn. Code Ann. § 39-13-305(b)(2). We find no indication in the record that the trial court applied this factor when sentencing the Defendant. However, in light of all circumstances, we do not believe that this factor is of sufficient weight to warrant reducing the sentence imposed on the Defendant by the trial court.

We therefore affirm the Defendant's conviction and sentence of twenty-five years for the crime of especially aggravated kidnapping.

_____
DAVID H. WELLES, JUDGE

CONCUR:


_____
JERRY L. SMITH, JUDGE


_____
JOHN K. BYERS, SENIOR JUDGE